PEARLSTINE DISTRIBUTORS, INC., Plaintiff,

v.

FREIXENET USA, INC., Freixenet S.A. and House of Wines of S.C., Inc., Defendants.

Civ. A. No. 2:86–2561–1.

United States District Court, D. South Carolina, Charleston Division.

Jan. 27, 1988.

Manton Grier, Sinkler & Boyd, Columbia, S.C., and Windels, Marx, Davies & Ives, New York City, for Freixenet defendants.

Andrew K. Epting, Jr., Wise & Cole, Charleston, S.C., for House of Wines of S.C.

## ORDER

HAWKINS, District Judge.

This matter is before the court on motion of plaintiff Pearlstine Distributors, Inc. (herein "Pearlstine") to dismiss the second counterclaim of defendant House of Wines of S.C., Inc. (herein "House of Wines"). In its second counterclaim, House of Wines alleges a violation of the Racketeer Influenced and Corrupt Organizations Act (herein "RICO"), 18 U.S.C. §§ 1961–1968 (1984 and Supp.1987).

Pearlstine bases its motion on two grounds. First, it claims that the complaint fails to state a claim upon which relief can be granted, and that dismissal is, therefore, proper pursuant to Fed.R.Civ.P. 12(b)(6). Second, Pearlstine claims that House of Wines has failed to plead the RICO violation with the particularity required by Fed.R.Civ.P. 9(b).

Pearlstine initiated this suit on September 26, 1986. Since that date, House of Wines answered and then amended its answer three times in an attempt to validly plead a RICO violation by Pearlstine. In the final form of its answer and counterclaim, House of Wines alleges four "predicate acts" which constitute a pattern of racketeering activity on the part of Pearlstine. The four acts alleged are as follows:

1. Pearlstine obtained the exclusive business of all restaurants at Sea Pines Plantation on Hilton Head, South Carolina, by carrying their accounts on credit and giving the businesses expensive gifts;

2. Pearlstine obtained the exclusive business of the Makato Restaurant in the same manner;

3. Pearlstine supplied a restaurant at 82 Queen Street in Charleston, South Carolina, with false invoices to aid the restaurant in concealing over

Russell Burke, Moore & Van Allen Nexsen Pruet, Columbia, S.C., for plaintiff.

$500,000 in narcotics transactions in violation of 18 U.S.C. § 1956 (Supp. 1987), and

4. Pearlstine and the above-mentioned restaurants conspired to destroy or conceal documents in order to hinder an investigation of the Bureau of Alcohol, Tobacco and Firearms in violation of 18 U.S.C. § 1510 (1984).

Furthermore, House of Wines alleges that the above actions were performed in furtherance of a scheme to defraud Pearlstine's competitors by creating the false appearance of legitimate business relations when, in fact, the relations were tainted with fraudulent, illegal and unfair trade practices. Finally, House of Wines claims that Pearlstine carried out the above practices by use of the mails and wires in violation of 18 U.S.C. §§ 1341 and 1343 (1984).

## I. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Fourth Circuit Court of Appeals restricted the class of potential civil RICO violators in *International Data Bank, Ltd. v. Zepkin*, 812 F.2d 149 (4th Cir.1987). The court held in that case that allegations of two or more predicate acts of racketeering activity do not necessarily constitute a pattern when the acts are in furtherance of a single fraudulent scheme. *Id.* at 154. This holding was reaffirmed in *Eastern Publishing and Advertising, Inc. v. Chesapeake Publishing and Advertising, Inc.*, 831 F.2d 488 (4th Cir.1987), in which the court found that the alleged predicate acts were all part of one scheme to gain a competitive edge over the plaintiff, and as such did not amount to a pattern of racketeering activity.

In the case at bar, House of Wines has pled four predicate acts on behalf of Pearlstine all of which, according to the counterclaim, were designed to secure a competitive edge over House of Wines and other wine distributors. However, this case is somewhat distinguishable from *Eastern Publishing* because of the continuing na-

ture of the alleged mail and wire fraud violations.

In *Eastern Publishing*, the court noted: "[N]o mechanical test can determine the existence of a RICO pattern," and ... the question is necessarily a "matter of criminal dimension and degree" to be decided on a case-by-case basis. The touchstone for assessing this ... was revealed by the legislative history's emphasis that what was targeted was "not sporadic activity" but continuity or the threat of continuity of criminal activity. (Citations omitted). *Eastern Publishing* at 492. The allegations made by House of Wines, particularly the mail and wire fraud allegations, represent criminal and anti-competitive activity which occurred over an eight year period. For this reason, the court declines to dismiss the counterclaim based on these cases. However, the Fourth Circuit's attempt to develop a more meaningful concept of "pattern" was prompted by the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), and the Court's recognition in that case of the extraordinary uses to which the civil RICO action has been put. Though this court does not find these recent Fourth Circuit decisions controlling in this case, the court does seek to resolve this matter consistently with the policy which underlies those decisions.

Pearlstine urges the court to find that the mail and wire fraud allegations are insufficient because they fail to allege an injury against which the mail and wire fraud statutes provide protection following *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). In that case, the Supreme Court concluded that the mail fraud statute does not protect the public's intangible right to honest government.

Pearlstine argues that the *McNally* case implies that a violation of the mail or wire fraud statutes cannot be stated without alleging the tangible loss of money or property. However, the Supreme Court has already determined that such is not the case. In *Carpenter v. United States*, ——

U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), the Court held that the mail and wire fraud statutes were violated by the appropriation of an intangible right of the *Wall Street Journal.* The intangible right involved in that case was the *Journal*'s pre-publication right to confidentiality of information gathered by employees of the *Journal.*

■ The intangible right involved in this case is the right of House of Wines to a level playing field in the wine distributorship marketplace. Admittedly, this right is not easily quantifiable, but it is a right established and protected by the federal antitrust laws, 15 U.S.C. §§ 1–27 and 44 (1973 and Supp.1987). In *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* —— U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Court held that the statute of limitations found in the Clayton Act, 15 U.S.C. § 15b (Supp.1987), should apply to civil RICO actions. The Court reasoned that both the RICO statute and the Clayton Act "seek to compensate the same type of injury." *Id.* 107 S.Ct. at 2764.

The court recognizes that the *Agency Holding* opinion compares the Clayton Act to the RICO statute and not to the mail and wire fraud statutes. However, mail and wire fraud frequently are pled as predicate acts which form an alleged pattern of racketeering activity. The RICO statute expressly provides that mail and wire fraud constitute racketeering activity. In light of the intimate relationship between the RICO statute and the mail and wire fraud statutes, the court cannot conclude that the allegation of deprivation of the right to fairly compete in the wine distributorship market fails to state predicate acts of mail and wire fraud.

■ The court now turns its attention to the sufficiency of the pleading to allege the two remaining predicate acts. The counterclaim alleges that Pearlstine and others conspired to obstruct an investigation by the Bureau of Alcohol, Tobacco and Firearms by destroying or concealing documents in violation of 18 U.S.C. § 1510 (1984).

This statute, however, creates an offense for obstruction of a criminal investigation by bribery, and does not apply to concealing or destroying documents. For this reason, the counterclaim fails to state a predicate racketeering act of obstruction of a criminal investigation, and this allegation cannot support the RICO cause of action.

Finally, the court turns to the most inflammatory of the allegations. House of Wines claims that Pearlstine aided the 82 Queen Street restaurant in the laundering of monetary instruments in violation of 18 U.S.C. § 1956 (Supp.1987). The statute on which House of Wines relies became effective on October 26, 1986, and was not added to the RICO statute as an enumerated racketeering activity until November 10, 1986.

The counterclaim does not supply the dates of the laundering activity, but it does state that the other three alleged racketeering acts occurred between 1977 and 1985. It, therefore, appears that there is a substantial likelihood that the laundering complained of occurred, if at all, prior to the time at which the activity became an enumerated racketeering act and could not, therefore, support a RICO cause of action. However, because the court has already concluded that the obstruction of a criminal investigation claim was insufficiently pled and will conclude that the mail and wire fraud violations are pled with insufficient particularity, a conclusion with respect to the laundering allegations is not necessary.

## II. FAILURE TO PLEAD WITH SUFFICIENT PARTICULARITY

■ Rule 9(b) of the Federal Rules of Civil Procedure requires that a complainant plead fraud with particularity. The courts have uniformly held that Rule 9(b) applies to the pleading of fraud in the context of a civil RICO claim. *E.g. Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 19 (2d Cir.1983), *cert denied sub nom. Moss v. Newman,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *see also, Schreiber Distributing Co. v. Serv–Well Furniture Co., Inc.,* 806 F.2d 1393, 1400 (9th Cir.1986), and *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.

1982), *cert. denied sub nom. Prudential Ins. Co. of America v. Bennett,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). Courts have been in less agreement concerning the degree of particularity required by Rule 9(b).

The only consistent principle that has emerged from the case law is that Rule 9(b) must be read in conjunction with Rule 8, Federal Rules of Civil Procedure. Wright and Miller, *Federal Practice and Procedure* § 1298 (1969). Rule 8 requires only notice pleading, however, so for Rule 9(b) to have any meaning at all, it must require that the complainant's pleading provide some information beyond that required to give the defendant mere notice of the fraud or, in this case, RICO claim.

As noted earlier, the Supreme Court recognized in *Sedima, S.P.R.L. v. Imrex Co., Inc., supra,* that the civil RICO cause of action has been put to extraordinary uses. *Id.* 105 S.Ct. at 3287. Many of these extraordinary uses are undoubtedly motivated by the clout which the treble damages provision of RICO provides in settlement negotiations. In *Sedima,* the Court noted that prior to 1985, only 3% of all civil RICO actions were tried in the 1970s, 2% were decided in 1980, 7% in 1981, 13% in 1982, 33% in 1983, and 43% in 1984. *Id.* 105 S.Ct. at 481. The Court declined in *Sedima* by a five to four vote to limit the cause of action by requiring a prior conviction of the predicate acts reasoning that such a limitation would not be consistent with the language of the statute.

There is no question, however, that Rule 9(b) was intended to redress a problem analogous to the one perceived by the Supreme Court in the RICO context. Several courts have held that one of the purposes of Rule 9(b) is to protect defendants against the harm to their reputations caused by baseless claims of fraud. *See e.g., Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir.1972); *Kellman v. ICS, Inc.,* 447 F.2d 1305, 1310 (6th Cir.1971); *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270, 1279 (N.D.Ill.1976). Obviously, when a defendant is charged with violation of a criminal statute, this consideration weighs heavily because the potential harm to an innocent defendant is great. For this reason, it is important that the allegations be pled with sufficient particularity to give the court some indicia of a likelihood of success of the RICO plaintiff on the merits.

The allegations of mail and wire fraud contained in the second counterclaim of House of Wines allege a fraudulent scheme to create the appearance of legitimate business transactions. The time period within which the alleged fraudulent acts occurred is between 1977 and 1985. The allegations involve all of the restaurants on Sea Pines Plantation at Hilton Head Island, South Carolina, as well as the Makato Restaurant.

Nowhere in the second counterclaim does House of Wines allege any act designed to conceal the supposedly illegitimate activities of Pearlstine, nor is there alleged any particular use of the mails or wires in furtherance of the scheme to conceal the anti-competitive acts.[1] The counterclaim states that Pearlstine sent bills and other writings through the mails, but the connection between sending bills and concealing anti-competitive practices is not apparent to the court, and the term "other writings" certainly does not reflect the specificity sought by Rule 9(b). Furthermore, House of Wines' allegations that Pearlstine used the wires in furtherance of this scheme is in no way substantiated with particulars.

The counterclaim does allege acts which may constitute antitrust violations, but House of Wines specifically states that it is the concealment of this activity on which it relied to its detriment, and not one act of concealment is alleged. House of Wines does not allege one false statement made by Pearlstine to it or to any of Pearlstine's

---

1. The counterclaim alleges violations of the mail and wire fraud statutes in connection with the concealment of the alleged obstruction of justice. For the same reasons stated herein with respect to concealment of the alleged antitrust violations, these acts of mail and wire fraud are also pled with insufficient particularity to satisfy Rule 9(b). Although House of Wines alleged concealment and destruction of documents in this context, it did not allege that these acts were accomplished by use of the mails or wires.

other competitors which might constitute fraud.

Furthermore, the alleged fraudulent conduct occurred over an eight year period, and in light of the Supreme Court's holding in *Agency Holding Corp. v. Malley–Duff & Associates, Inc., supra,* the actions alleged may be outside the four year statute of limitations period. Finally, any damage suffered by House of Wines by the underlying antitrust violations is compensable pursuant to the antitrust laws, and House of Wines has so pled in its first counterclaim.

The allegations of mail and wire fraud are insufficiently particular (1) to allow Pearlstine to meaningfully respond to the claims, and (2) to provide the court with any indicia of the veracity of the claims which would prompt the court to allow the claim to proceed in light of the risk of grave harm to the business reputation of Pearlstine. Therefore, these allegations cannot support a civil RICO cause of action.

Having determined that House of Wines has properly pled at most one act of racketeering activity, the court must dismiss the counterclaim for failure to properly allege two predicate acts of racketeering activity which constitute a pattern as is required by 18 U.S.C. § 1961(5) (1984). Because House of Wines has already attempted to properly plead the RICO violation three times, the court declines to accept House of Wines' invitation to allow it to amend the counterclaim. It is, therefore,

ORDERED, that the motion of Pearlstine Distributors, Inc. to dismiss the second counterclaim of House of Wines of S.C., Inc. be, and the same is hereby, granted, and the second counterclaim of defendant House of Wines of S.C., Inc. is hereby dismissed with prejudice.

AND IT IS SO ORDERED.